906 So.2d 666 (2005)
Weldon Perry DOBBS
v.
MAINTENANCE ENTERPRISES, INC.
Darryl D. Vallet
v.
MAINTENANCE ENTERPRISES, INC.
Nos. 2004 CA 0058, 2004 CA 0059.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
*667 J. Peyton Parker, Jr., Baton Rouge, for Claimants-Appellees Weldon Perry Dobbs and Darryl D. Vallet.
John J. Rabalais, Janice B. Unland, James C. Arceneaux, IV, Covington, for Employer-Appellant Maintenance Enterprises, Inc.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
PETTIGREW, J.
The employer in this workers' compensation action seeks review of a judgment that awarded claimants' benefits together with penalties and attorney fees, and denied its claim for an offset or credit for monies that claimants received from the insurer of the third-party tortfeasor. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On September 28, 2001, Weldon Perry Dobbs and Darryl D. Vallet were injured in an automobile accident on the island nation of Aruba while working for Maintenance Enterprises, Inc. ("MEI"). At the time of the accident, Mr. Dobbs and Mr. Vallet were driving to work in a company-supplied automobile when their vehicle was struck from the rear by a vehicle being driven at a high rate of speed by an employee of the Dutch government. As a result of this accident, both Mr. Dobbs and Mr. Vallet sustained serious injuries and were transported to a hospital in Aruba.
Mr. Dobbs testified that MEI's safety manager in Aruba, Louis Jordan ("Mr. Jordan"), appeared at the hospital on the night of the accident, and later met with him in his hospital room several days following the accident. In connection with this accident, Mr. Dobbs sustained nine broken ribs, a punctured lung, a bruised heart, and a broken collarbone. Mr. Jordan advised Mr. Dobbs that benefits under the Louisiana Workers' Compensation Act were not available to him outside of the United States, but that the vehicle driven by the tortfeasor was insured. Mr. Jordan offered to investigate the matter further on Mr. Dobbs' behalf, and referred Mr. Dobbs to his son, Edmond Jordan ("Edmond Jordan"), a Baton Rouge attorney, in the event Mr. Dobbs needed legal assistance.
*668 Mr. Jordan returned to the hospital later that week and advised Mr. Dobbs that he and his son had contacted the insurer of the tortfeasor's vehicle and learned that there existed an indeterminate amount of coverage that would take care of his medical bills. Mr. Dobbs thereafter directed Mr. Jordan to have the payments from the insurance company forwarded to his bank account in Aruba. Mr. Dobbs never spoke to attorney Edmond Jordan until he returned home to Louisiana several months later.
Mr. Dobbs remained hospitalized in Aruba for approximately ten days, and remained in Aruba for another six weeks pursuant to orders from his doctor. The payments from the insurance company "trickled in" during Mr. Dobbs' hospitalization and continued following his release and return to Louisiana in mid-November of 2001.
As a result of this accident, Mr. Vallet sustained five broken ribs, a bruised left lung, a collapsed right lung, a broken shoulder, a double concussion, and numerous bruises, for which he remained hospitalized in Aruba for seven days following the accident. In accordance with his instructions, Mr. Vallet's payments from the insurance company were wired to his bank account in Livonia, Louisiana.
Mr. Vallet returned to the United States, following his release from the hospital, on a flight with Mr. Jordan, MEI's safety manager in Aruba. Mr. Vallet testified that Mr. Jordan told him the insurance company "would pay [their] salary probably until the end of the year, that's how far it should run." When Mr. Vallet stopped receiving the checks from the insurance company, he spoke to Mr. Jordan again who advised him that all of the benefits under the policy had been used. Mr. Dobbs and Mr. Vallet testified that they each received a total of $28,000.00 in payments from the insurance company.
Following Mr. Dobbs' return to Louisiana in November 2001, Mr. Dobbs and Mr. Vallet met for the first time with attorney Edmond Jordan at his office in downtown Baton Rouge. Edmund Jordan purportedly advised Mr. Dobbs and Mr. Vallet that he would give them "a good deal" and for his time and trouble, he would charge them "15 percent across the board."
Mr. Dobbs testified that it was his understanding that the insurance company paid out everything it was obligated to pay under the terms of the policy; however, despite his requests, Mr. Dobbs claimed that he was unable to obtain from either Edmund Jordan or the insurance company in Aruba, a copy of the insurance policy or an itemization of which bills or the amounts that were paid[1]. Edmund Jordan assured Mr. Dobbs that "the case isn't over with yet." Shortly before the end of 2001, Edmund Jordan contacted Mr. Dobbs and Mr. Vallet and requested that the men settle up with him as he needed to close his books. Mr. Vallet testified that he paid[1]. Edmund Jordan his fee of $3,750.00. Mr. Dobbs testified that he complained to Edmund Jordan that he was still unable to return to work, and consequently did not pay him.
Both Mr. Dobbs and Mr. Vallet stated emphatically that they never executed a release or a settlement agreement with respect to their claim against the insurance company, and denied signing a contract of representation with attorney Edmond Jordan. Mr. Vallet later sought other legal representation, and a disputed *669 claim for disability benefits pursuant to the Louisiana Workers' Compensation Act was filed on his behalf on January 25, 2002. A similar claim was filed on behalf of Mr. Dobbs on February 19, 2002.
MEI filed a motion for summary judgment on January 28, 2003, that was denied by the workers' compensation court on February 21, 2003. MEI indicated it would seek writs from this court; however, no such relief was apparently ever requested.[2]
A workers' compensation hearing was later held on June 5, 2003. Prior to the hearing, the parties stipulated that on or about September 28, 2001, Mr. Dobbs and Mr. Vallet received certain injuries during the course and scope of their employment with MEI, and that as a result of said injuries, Mr. Vallet was unable to work for 25 weeks, and Mr. Dobbs was unable to work for 28 weeks. It was further stipulated that Mr. Dobbs and Mr. Vallet received $28,000.00 each from the third-party insurance carrier, and that their weekly rate of indemnity was $398.00.
After hearing the testimony and considering the evidence, the workers' compensation court ruled in favor of Mr. Dobbs and Mr. Vallet and against their employer, MEI. Mr. Dobbs was awarded $11,144.00 in temporary total disability benefits and Mr. Vallet was awarded $9,950.00 in temporary total disability benefits. The workers' compensation court further ordered MEI to pay penalties of $2,000.00 and attorney fees of $5,000.00 together with legal interest thereon. A formal judgment was subsequently signed on July 23, 2003, and from this judgment, MEI has taken the instant appeal.

ISSUES PRESENTED FOR REVIEW
In connection with its appeal in this matter, MEI presents the following issues for review by this court:
1. The workers' compensation judge erred in awarding the employees temporary, total disability benefits for 25 weeks in the case of Mr. Vallet and 28 weeks in the case of Mr. Dobbs;
2. The workers' compensation judge erred in assessing the employer with a penalty and awarding the employees with an attorney fee for the employer's decision not to pay indemnity benefits;
3. The workers' compensation judge erred in not allowing the employer to take credit for the settlement reached by Mr. Dobbs and Mr. Vallet with the third party tortfeasor.

STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As an appellate court, we cannot set aside the factual findings of the workers' compensation judge unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based upon the credibility of witnesses, the fact finder's decision to credit a witness's testimony must *670 be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.

ANALYSIS
The situation presented by the facts in the instant case appears to be a matter of first impression.

Award of Disability Benefits
The initial issue raised by MEI in connection with its appeal in this matter is whether the workers' compensation judge erred in awarding the employees temporary, total disability benefits for 25 weeks in the case of Mr. Vallet and 28 weeks in the case of Mr. Dobbs. In its brief to this court, MEI cites with emphasis the language of La. R.S. 23:1103(A)(1) that states, in pertinent part, as follows:
In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six percent per annum, and shall be satisfied by such payment. [Emphasis supplied.]
MEI further cites the language of La. R.S. 23:1103(B) that provides:
The claim of the employer [for the compensation actually paid] shall be satisfied in the manner described above from the first dollar of the judgment without regard to how the damages have been itemized or classified by the judge or jury. Such first dollar satisfaction shall be paid from the entire judgment, regardless of whether the judgment includes compensation for losses other than medical expenses and lost wages. [Emphasis supplied.]
MEI contends that based upon the foregoing statutory provisions, an employer's claim for the recovery of compensation actually paid takes precedence over a claim by an injured employee to recover damages from the responsible tortfeasor. MEI argues that an employer only becomes liable for workers' compensation payments when the amount of workers' compensation benefits owed eclipses the amount recovered by the employee in his suit against the tortfeasor. MEI further contends that the workers' compensation court's award of compensation to Mr. Vallet and Mr. Dobbs was tantamount to a double recovery because each of these men recovered from the tortfeasor's insurer damages greater than the compensation they could have potentially been owed by MEI.
Following an in-depth review of the record, we must disagree. This case is unusual in its facts for the reason that a lawsuit was never filed on behalf of Mr. Dobbs or Mr. Vallet against the insurance company of the third-party tortfeasor. Moreover, MEI never instituted litigation *671 against the tortfeasor or his insurance company. Finally, both Mr. Dobbs and Mr. Vallet testified emphatically that they did not authorize a settlement nor did they execute any type of agreement or release with respect to their claim against the tortfeasor's insurer. It appears from the evidence presented that the insurer of the tortfeasor voluntarily remitted payments up to the limits of its policy.
In its oral reasons for judgment, the workers' compensation court opined:
I have to say at first blush this morning in our conference in my office, I thought this was going to be a real easy call. But after looking at the statutes Title 23, they simply don't apply. There is absolutely nothing in the Workers' Comp Act to apply to this case. [Revised Statute 23:]1102 deals with suits against third persons, a notice of filing. There has been no suit filed in this case. [Revised Statute 23:]1102(B) talks about if a compromise is made by the employee, there has never been any compromise. 1102(B) does not apply. [Revised Statute 23:]1103, damages and apportionment between employer and employee in suits against third persons, there has never been a lawsuit filed in this case. [Revised Statute 23:]1103(A) talks about in the event that the employer or employee or his defendant [sic] becomes party/plaintiff in a suit against third persons, there has been no suit in this case. [Revised Statute 23:]1103(B) talks about the claim of the employer being satisfied dollar for dollar out of a judgment, regardless of how the judgment is itemized, there has been no judgment in this case. [Revised Statute 23:]1103(C) talks about if the employer or employee intervenes in a third-party suit filed by someone else, there has been no lawsuit filed in this case. There is nothing in the Workers' Comp Act to cover this scenario.
I am of the opinion that it is always the ultimate idea of the Workers' Comp Act to strike a compromise between the tort arena and the workers' comp arena, that the trade-off is you don't get pain and suffering and there's no proof required for negligence. In this instance, certainly, there's no right for Mr. Dobbs or Mr. Vallet to get any kind of pain and suffering from the employer, but they do have a right to get compensated for their pain and suffering from the tort feasor [sic], and there is nothing that covers if someone gets compensated by a tort feasor [sic] without compromising their claim, without settling their claim, without even filing a lawsuit, how those funds are to be allocated.
We agree with the reasoning of the worker's compensation court. Although MEI claims a preference in reimbursement for compensation benefits it actually paid, it is undisputed that MEI paid no compensation benefits to either Mr. Dobbs or Mr. Vallet. MEI would have this court believe that it may escape its responsibility to provide benefits to an injured claimant in the event of a voluntary tender by the tortfeasor. We do not believe this to be correct. Additionally, the statutes cited by and relied upon by MEI refer to damages recovered, not as a result of a voluntary tender, but through a suit involving the tortfeasor. That is not the situation presented by the case at bar. This issue is without merit.

Award of Penalties and Attorney Fees
The second issue raised by MEI in its appeal in this matter is that the workers' compensation court erred in assessing the employer with a penalty and awarding the employees with an attorney fee for the employer's decision not to pay indemnity benefits.
*672 At the hearing in this matter, MEI put forth the testimony of Victor Prudhomme, a claims manager with National Loss Control, the workers' compensation benefits administrator for Louisiana Commerce & Trade Self-Insurer's Fund. Mr. Prudhomme testified that he first became aware that Mr. Dobbs and Mr. Vallet had been involved in an accident in Aruba when he received a telephone call from MEI in October 2001, which advised that the matter was being handled within the confines of the tortfeasor's insurance policy. Later, when he learned that Mr. Dobbs and Mr. Vallet had filed a disputed claim for compensation, Mr. Prudhomme testified that he did not authorize the payment of benefits because "a third-party claim was settled, the auto insurer for the party was at fault, and there were credits under the workers' comp statute that had to be applied." Mr. Prudhomme agreed that because the benefits sought by Mr. Dobbs and Mr. Vallet were less than the amounts these men had received from the third-party insurance company, he never initiated any payments in response to the compensation claims.
In response to questions posed to him by the workers' compensation judge, Mr. Prudhomme admitted that although the matter was obviously a workers' compensation claim, he did not, once he learned of the accident, investigate the matter, or contact Mr. Dobbs and Mr. Vallet because based upon what MEI had told him, the men were already receiving money in Aruba. Mr. Prudhomme further stated that he had no reason to doubt the veracity of MEI's statements that monies were available in Aruba to compensate the men for their injuries.
Once again, we refer to the oral reasons for judgment provided by the workers' compensation court that opined:
To me, the employer should pay the indemnity benefits and then take it up and ask for the recovery, because $28,000, anybody in looking at these meds would know that that doesn't come close to covering what is owed in this case.
. . . .
... And I am appalled at this employer. This employer lied to his employees, told them they were not entitled to workers' comp, comes back here and in my mind lies to the insurance company and just says, ["]It's all being taken care of, don't worry about it["], and these gentlemen have never even heard from their own workers' comp carrier to find out whether they're okay. On 10/01 when Mr. Prudhomme was advised of the claim, they hadn't gotten any money. They hadn't received $28,000. Heck, the accident had only happened three days before, 9/28, . . . They hadn't gotten any money. Workers' comp benefits should have been started. There's no reason for workers' comp benefits not to have started in October of 2001, and then [MEI] could have gotten their money back from the monies that [Mr. Dobbs and Mr. Vallet] got, then [MEI] would have paid something. [MEI] would have had our intervention right to get reimbursed for even maybe. [sic]... And I'm finding that MEI had no reason to controvert this claim. The ... employer, who is the only defendant, knew of the accident immediately, was asked by Mr. Dobbs specifically in the hospital for workers' comp benefits, and they said, ["]You don't have a right to get them because you're out of the country.["] I am sorry. That is just a boldfaced lie, and that's an employer going way out on a limb to try and slam something down and keep from being responsible to these two gentlemen for what they owed them and then coming *673 back here and telling their insurance company, ["]Don't worry about it, somebody else is going to pay the bill.["] I'm finding that isn't even close to controverting the claim. I have no problem, quite frankly, with the insurance company. I think its wrong for them to depend on what MEI does, but they're not made a party to the suit.
MEI is found to be  not have reasonably controverted the claim, the act does not cover the situation, and I'm going to give the $2,000 penalty for failure to pay the indemnity benefits and a $5,000 attorney's fee.
Again, we agree with reasoning of the worker's compensation court. Louisiana Revised Statute 23:1035.1(1) provides, in pertinent part, as follows:
If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he ... would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee... shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
(a) ...
(b) he is working under a contract of hire made in this state. In addition to the foregoing, La. R.S. 23:1208 provides, in pertinent part, as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or any other person, to willfully make a false statement or representation.
. . . .
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution.
We agree with the workers' compensation court's decision to assess MEI with a $2,000.00 penalty for its failure to pay indemnity benefits and its award of $5,000.00 for attorney fees. In view of the egregious facts of this case, we find said amounts to be quite reasonable. This issue is similarly without merit.

Right of Employer to Credit
The third and final issue raised by MEI concerns the workers' compensation court's decision not to credit MEI for the settlement Mr. Dobbs and Mr. Vallet reached with the third-party tortfeasor. In support of its contention that it was entitled to a credit, MEI argues that the intent of the compensation statute is that if a worker receives money as a result of an accident arising during the course and scope of their employment, the employer is entitled to the benefit of said payment. Once again, MEI cites La. R.S. 23:1103 as authority for this proposition.
Yet again we refer to the oral reasons for judgment provided by the workers' compensation court that opined:
And, as I said, the Workers' Comp Act simply doesn't cover it. There's nothing in here that covers it anywhere, and I checked what few cases I have on third-party suits, and they all deal with either a third-party suit or somebody signing settlement documents to settlement [sic] something. The legislature covered that.
This is not double recovery. It is not even remotely double recovery, because there is still a lot that's not been compensated for in this case, and I don't *674 know that it ever will be unless somebody goes to Aruba and chases down a Dutch counselor or what have you. Well, [the tortfeasor] got off  I'm amazed at how much he got off.
As we noted earlier, the statutes cited by MEI refer to damages recovered, not as a result of a voluntary tender, but through a suit involving the tortfeasor. That is not the situation presented by the case at bar. This issue is also without merit.

CONCLUSION
For the above and foregoing reasons, the decision of the workers' compensation court is hereby affirmed. All costs associated with this appeal shall be assessed against the employer, defendant-appellant, Maintenance Enterprises, Inc.
AFFIRMED.
CARTER, J., concurs.
NOTES
[1] A subsequent attorney retained by Mr. Dobbs and Mr. Vallet learned that the policy in question had a limit of 150,000 florins of Arubian currency. This is purportedly equivalent to $85,000.00 U.S. dollars.
[2] A request for writs is not found either within the record presently before this court, or in the office of the Clerk of Court, First Circuit, Court of Appeal.